**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| WILLIAM MCDONNELL, | CASE NO. 3:15-cv-00383-JMM-GBC |
| Plaintiff, | (JUDGE MUNLEY) |
| | (MAGISTRATE JUDGE COHN) |
| v. | |
| CAROLYN W. COLVIN, COMMISSIONER OF SOCIAL SECURITY, | REPORT AND RECOMMENDATION TO VACATE THE DECISION OF THE COMMISSIONER AND REMAND FOR FURTHER PROCEEDINGS |
| Defendant. | Docs. 1, 5, 6, 7, 8 |

<u>**REPORT AND RECOMMENDATION**</u>

## I.    Introduction

The above-captioned action is one seeking review of a decision of the Commissioner of Social Security ("Defendant") denying the application of William McDonnell ("Plaintiff") for disability insurance benefits ("DIB") under the Social Security Act, 42 U.S.C. §§401-433, 1382-1383 (the "Act") and Social Security Regulations, 20 C.F.R. §§404.1501 *et seq.*, §§416.901 *et. seq.* (the "Regulations"). Plaintiff stopped working after a spring-loaded steel rod struck him and flung him into a truck, fracturing his hands, fingers, pelvis, and hip and causing herniated discs in his lumbar and cervical spine. (Tr. 52-53, 59, 514-20, 526-27, 589-90, 695-98). He treated with multiple surgeries, injections, physical therapy, and narcotic pain medication. (Tr. 695-98). He reported significantly limited daily

activities. (Tr. 551-55). Plaintiff's treating physician and a consultative examiner opined that he could perform sedentary work, but only part-time, as a result of his injuries. (Tr. 538-48, 610, 678, 697). His treating physician indicated that he was a "very compliant" patient, but his symptoms were permanent. (Tr. 697).

The ALJ found that Plaintiff could perform full-time sedentary work and denied benefits. (Tr. 12-24). The only evidence supporting the ALJ's finding was an opinion from a non-treating, non-examining source that Plaintiff could perform light work. (Tr. 551-55). The ALJ is required to afford special deference to treating physicians and provide "good reasons" for rejecting opinions from treating physicians. 20 C.F.R. §404.1527(c)(2). Here, the ALJ failed to provide "good reasons." *Id.* The Court recommends that Plaintiff's appeal be granted, the decision of the Commissioner be vacated, and the matter be remanded for further proceedings.

## II.    Procedural Background

On November 14, 2011, Plaintiff applied for DIB. (Tr. 129-35). On February 28, 2012, the Bureau of Disability Determination ("state agency") denied Plaintiff's application (Tr. 90-94), and Plaintiff requested a hearing. (Tr. 101). On March 7, 2013, an ALJ held a hearing at which Plaintiff—who was represented by an attorney—and a vocational expert ("VE") appeared and testified. (Tr. 43-89). On March 26, 2013, the ALJ found that Plaintiff was not entitled to benefits. (Tr.

12-24). Plaintiff requested review with the Appeals Council (Tr. 6-11), which the Appeals Council denied on December 21, 2014, affirming the decision of the ALJ as the "final decision" of the Commissioner. (Tr. 1-5). *See Sims v. Apfel*, 530 U.S. 103, 107 (2000).

On February 23, 2015, Plaintiff filed the above-captioned action pursuant to 42 U.S.C. § 405(g) to appeal the decision of the Commissioner. (Doc. 1). On April 30, 2015, the Commissioner filed an answer and administrative transcript of proceedings. (Docs. 5, 6). On June 15, 2015, Plaintiff filed a brief in support of the appeal ("Pl. Brief"). (Doc. 7). On July 20, 2015, Defendant filed a brief in response ("Def. Brief"). (Doc. 8). On June 29, 2015, the Court referred this case to the undersigned Magistrate Judge. The matter is now ripe for review.

### III.    Standard of Review and Sequential Evaluation Process

To receive benefits under the Act, a claimant must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A). The ALJ uses a five-step evaluation process to determine if a person is eligible for disability benefits. *See* 20 C.F.R. § 404.1520. The ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the

claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment from 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing"); (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and (5) whether the claimant's impairment prevents the claimant from doing any other work. *See* 20 C.F.R. §§ 404.1520. Before step four in this process, the ALJ must also determine Plaintiff's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e).

The disability determination involves shifting burdens of proof. The claimant bears the burden of proof at steps one through four.  If the claimant satisfies this burden, then the Commissioner must show at step five that jobs exist in the national economy that the claimant can perform. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). The ultimate burden of proving disability under the Act lies with the claimant. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.912(a).

When reviewing the denial of disability benefits, the Court must determine whether substantial evidence supports the denial. *Johnson v. Commissioner of Social Sec.*, 529 F.3d 198, 200 (3d Cir. 2008). Substantial evidence is a deferential standard of review. *See Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). Substantial evidence "does not mean a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)

(quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial

evidence is "less than a preponderance" and "more than a mere scintilla." *Jesurum*

*v. Sec'y of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995)

(citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

### IV.    Relevant Facts in the Record

Plaintiff was born in 1965 and was classified by the Regulations as a

younger person on the date last insured. (Tr. 23); 20 C.F.R. § 404.1563. He has

past relevant work as a bulldozer operator. (Tr. 22).  Plaintiff stopped working full-

time when "he suffered catastrophic injuries in a work accident that occurred on

January 28, 2005." (Pl. Brief at 2) (citing Tr. 56-57, 78).  A spring loaded steel rod

struck him and flung him into a truck, fracturing his hands, fingers, pelvis, and hip

and causing herniated discs in his lumbar and cervical spine. (Tr. 52-53, 59, 526-

27, 695-98). X-rays and MRIs of lumbar and cervical spine indicated significant

abnormalities in 2006 and 2012. (Tr. 514-18, 520, 589-90). Plaintiff worked for a

local union, the Operating Engineers, in 2005 and 2006, earning $4,225.00 and

$3,500.00 each year, respectively. (Tr. 148). He alleges onset on January 1, 2007

and his date last insured is December 31, 2010. (Tr. 17).

There are statements from five physicians that meet the definition of

"medical opinion" in 20 C.F.R. §404.1527(a) in the record. Plaintiff's treating

physician, Dr. William Prebola, opined that Plaintiff could not perform full-time

work. (Tr. 560, 610, 678, 697). Dr. Toni J. Parmalee, D.O., opined that Plaintiff could not perform full-time work. (Tr. 538-48). Dr. Michael Wolk, who examined Plaintiff at the request of his employer's workers' compensation carried, opined that Plaintiff could perform sedentary work, but did not address whether Plaintiff could work full-time. (Tr. 683-92). State agency physician Dr. Louis Tedesco reviewed Plaintiff's file, and opined that he could perform light work. (Tr. 549-55). Dr. John T. Rick, M.D., opined that Plaintiff could not return to his past work. (Tr. 505-06).

Specifically, on March 5, 2007, Dr. Michael Wolk, M.D., performed an independent medical evaluation for Plaintiff's workers' compensation claim. (Tr. 684). He opined that Plaintiff "sustained rather significant multiple traumas as a result of the accident of 1/28/05" and "the emotional component cannot be understated as well." (Tr. 691). Dr. Wolk opined that Plaintiff could perform "sedentary duty" work. (Tr. 691). He did not provide specific functional limitations. (Tr. 691).

On April 20, 2007, Dr. Prebola examined Plaintiff for the first time. (Tr. 557). He reviewed Plaintiff's medical records, and noted that he "has had extensive injection therapy" that were not helpful, physical therapy that "only made his symptoms worse," and "multiple surgeries." (Tr. 557-59). He had undergone

"extensive surgical repair of his upper extremities." (Tr. 557). Plaintiff reported that:

> He still has been having low back pain and even cervical pain, as well as right shoulder discomfort. His greatest area of pain is the low back, with referred right hip and pelvic area pain. The pain shoots down into the right lateral dorsal aspect of the foot. He has right shoulder pain and right trapezius area discomfort. He has forearm discomfort, and he cannot make a full fist on the right hand due to the index digit. He does have tingling and numbness in the extremities as well. He does have pain in neck area, down into the right shoulder.

(Tr. 557). Plaintiff reported that "he was working at the local union hall, and he has been a heavy equipment operator and mechanic in the past." (Tr. 558). Examination indicated "obvious" muscle spasm, trigger points, antalgic gait "with limping over the right side," decreased range of motion in his spine and shoulders, a positive Lasegue's maneuver, and diminished sensory function in his lower extremities and in his upper extremities near his scars. (Tr. 559). He "could not make [a] full fist with his right hand." (Tr. 559). Dr. Prebola observed that Plaintiff had "obvious depression…reactive from his chronic pain." (Tr. 560). Dr. Prebola prescribed narcotic pain medication and Lyrica and indicated that Plaintiff would undergo more injections. (Tr. 560). Dr. Prebola opined that Plaintiff could perform "a very sedentary job, with a maximum lifting of 10 pounds occasionally, and nothing repetitively more than 2 pounds frequently." (Tr. 560).

On March 12, 2008, Dr. Parmalee examined Plaintiff. (Tr. 538). Plaintiff reported burning, numbness, and tingling in his upper and lower extremities,

fatigue, pain, carpal tunnel syndrome, and depression. (Tr. 538). Examination indicated thoracolumbar scoliosis, loss of cervical lordosis, difficulty getting out of the chair, standing and moving with difficulty, tenderness in the sacroiliac joint and spine, muscle spasm in her the cervical spine, lumbar spine, and trapezius muscles, limited range of motion, positive straight leg raise, tenderness in the shoulder, limited and painful range of motion in the hip, diminished sensation in his bilateral lower extremities, and difficulty getting on and off the examination table. (Tr. 541). Dr. Parmalee also reviewed MRIs of the lumbar and cervical spine showing encroachment on the neural foramina, protruding discs, fluid in the intervertebral joints, osteophytes and degenerative disc disease. (Tr. 542). She opined that Plaintiff could stand and walk for one hour or less out of an eight-hour day and sit for up to two hours in an eight-hour day. (Tr. 543).

On April 30, 2008, Dr. Louis Tedesco, M.D., reviewed Plaintiff's file and authored an opinion. (Tr. 555). He wrote that Dr. Parmelee's opinion was "not consistent with all of the medical and non-medical evidence in the claims folder." (Tr. 555). Dr. Tedesco did not explain what evidence was inconsistent with Dr. Parmelee's opinion. (Tr. 554). Dr. Tedesco wrote that Plaintiff reported "daily activities that are significantly limited" and had pursued treatment "aggressively," rather than conservatively. (Tr. 554). Dr. Tedesco cites the diagnostic imaging showing neuroforaminal encroachment, and Dr. Prebola's physical examinations

that showed cervical and lumbar spasms, decreased range of motion, positive straight leg raise, and decreased grip strength. (Tr. 554). Dr. Tedesco does not acknowledge Dr. Prebola's opinion from the same treatment record that Plaintiff was limited to sedentary activities. (Tr. 551-55, 560). Dr. Tedesco notes that the state agency interviewer observed no problems sitting or standing, he can walk "200 yards," and does not require an assistive device to ambulate. (Tr. 554). Dr. Tedesco opined that Plaintiff had no limitation whatsoever in using his upper extremities. (Tr. 551).

On August 3, 2012, and October 3, 2012, Dr. Prebola prepared another medical opinion. (Tr. 682). He opined that Plaintiff could sit for four hours out of an eight-hour workday and stand or walk for two hours out of an eight-hour workday. (Tr. 610, 678). Dr. Prebola also prepared a video describing Plaintiff's condition. (Tr. 695). He explained that Plaintiff had "undergone an extensive course of both surgical treatment and still had symptoms." (Tr. 695). Dr. Prebola explained that Plaintiff could perform sedentary activities, but "sustained gainful employment for him is going to be very difficult" because he had "more bad days than good days." (Tr. 696). Dr. Prebola opined that Plaintiff was "not going to be able to do a lot of gripping, squeezing, he'll have difficulty with fine manipulation and because he's got such extensive spinal impairment and spinal injury and pelvic injuries, he's going to required a seated sedentary position." (Tr. 697). Dr. Prebola

opined that Plaintiff had been "very compliant," always "appropriately on time and he's done everything we've asked him to do." (Tr. 697). Dr. Prebola opined that Plaintiff's injuries were "going to remain permanent." (Tr. 697).

Defendant asserts that:

> Good response to treatment was highlighted on June 8, 2006 (Tr. 461). Plaintiff underwent a left index finger metacarpal derotational osteotomy with flexor extensor tendon tenolysis of the index finger on April 18, 2006 (Tr. 502). One week later, Plaintiff had a full range of motion in his shoulder, elbow, forearm, and thumb and only slight limitations in his wrist and digits (Tr. 465). Plaintiff retained a full range of motion throughout as of May 1, 2006 (Tr. 475).

(Def. Brief at 3). However, this is prior to Plaintiff's alleged onset. (Tr. 17). Plaintiff alleges onset on January 1, 2007. (Tr. 17). His date last insured in December 31, 2010. (Tr. 17).

Defendant asserts that "[i]njection therapy continuously provided Plaintiff an extended period of relief and pain control throughout the relevant period (Tr. 521, 525, 561-62, 564, 600)." (Def. Brief at 3). These pages in the transcript show pain relief on only one date. On June 12, 2007, Plaintiff reported that injections in May of 2007 "relieve[d] his pain symptoms in the low back area." (Tr. 525, 561-62, 564). Plaintiff denied numbness to his lower extremities. (Tr. 525). Examination was essentially normal. (Tr. 525). The other page Defendant cites shows that he remained symptomatic in January of 2011, with "permanent limitations and permanent impairment [and] permanent symptoms." (Tr. 600).

Defendant asserts that, "conservative treatment such as physical therapy, home exercise, therapeutic exercise, massage therapy, hot moist pack, ice packs, and pain management alleviated Plaintiff's pain (Tr. 461, 525, 563, 586)." (Def. Brief at 3).  Some of these records are from prior to the relevant period. (Tr. 461). Others reflect the same single date when Plaintiff reported pain relief, June 12, 2007. (Tr. 525). Another indicates that, on May 30, 2008, Plaintiff reported "ongoing hip and pelvic discomfort," and "some neck and low back discomfort, and even some shoulder pain." (Tr. 563). He was "still depressed about being in pain." (Tr. 563). Plaintiff continued to suffer from chronic pain syndrome. (Tr. 563). The last page Defendant cites is a December 30, 2011 evaluation by a chiropractor, where Plaintiff reported that "nothing in particular is palliative" and continued experiencing neck pain, headaches, and mid back pain.  (Tr. 585).

Aside from the single date identified by Defendant, June 12, 2007, Plaintiff consistently reported that his pain had not been relieved throughout the relevant period. On September 4, 2007, Plaintiff reported the injections gave him "improvement with his sitting tolerance," but was "still having ongoing upper back, neck, low back and some hip discomfort." (Tr. 566). Examination indicated tenderness, decreased range of motion, and muscle spasm, and Dr. Prebola indicated that "his exam is really unchanged from back in April." (Tr. 566). On March 14, 2008, Plaintiff reported low back, upper back, and hip pain and hand

stiffness. (Tr. 593). On July 24, 2008, Plaintiff reported having good days and bad days, with pain in his shoulder, right hip, foot, and mid-back. (Tr. 592). On November 14, 2008, Plaintiff reported "having his ongoing regular pain" to Dr. Prebola. (Tr. 567). He reported that extra-strength Vicodin "does help him, but does not cure him." (Tr. 567). Examination indicated muscle spasm, tenderness, decreased range of motion, and grossly normal gait. (Tr. 567). "Otherwise his exam [was] unchanged." (Tr. 567). On December 8, 2008, Plaintiff reported to his primary care physician that his "back pain persists." (Tr. 591).

On May 8, 2009, Plaintiff was "having ongoing pain." (Tr. 568). Dr. Prebola explained that "his pain is going to be permanent." (Tr. 568). Examination indicated muscle spasm, decreased range of motion, grossly normal gait, and tenderness. (Tr. 568). On June 15, 2009, Plaintiff reported "multiple painful areas" to his primary care physician. (Tr. 581). On October 16, 2009, Plaintiff was "having ongoing pain issues" with "perineal discomfort and the low back pain." (Tr. 569). Examination indicated muscle spasm, decreased range of motion, grossly normal gait, and tenderness. (Tr. 569). His Vicodin Extra Strength was continued. (Tr. 569).

On October 11, 2010, he reported "diffuse" pain secondary to his injuries. (Tr. 584). On October 28, 2010, Dr. Prebola noted that Plaintiff had "ongoing neuropathic discomfort down the pelvic region" and "ongoing back and pelvic

discomfort," with "numbness sometimes." (Tr. 570). His Vicodin Extra Strength was continued. (Tr. 570). On January 6, 2011, Dr. Prebola noted that Plaintiff was having "ongoing pain complaints as before." (Tr. 571). Plaintiff's "scrotal numbness sometimes increases when he is sitting." (Tr. 571). Examination indicated decreased range of motion, muscle spasm, and slightly antalgic gait. (Tr. 571). Dr. Prebola again opined that Plaintiff could expect to have "permanent pain." (Tr. 571).

Plaintiff reported problems sitting, standing, walking, and using his hands during the relevant period. (Tr. 61, 78, 176, 185, 538, 686). Plaintiff consistently reported that his symptoms limited his activities during the relevant period. (Tr. 61, 78, 171-78, 185, 538, 558, 686). His mother submitted a Function Report, not addressed by the ALJ, corroborating these limitations. (Tr. 160-70).

On March 26, 2013, the ALJ issued the decision denying benefits. (Tr. 12-24).The findings relevant to this appeal are discussed below.

## V.    Plaintiff Allegations of Error

### A.    Medical Opinions

The ALJ gave great weight to Dr. Wolk's opinion that Plaintiff could perform "sedentary work" and Dr. Prebola's opinion that Plaintiff could perform "sedentary work." (Tr. 21-22). The ALJ agreed with Dr. Tedesco's opinion. (Tr. 22).  The ALJ assigned little weight to Dr. Prebola's later opinions because they

were "inconsistent with" his earlier opinion and "not supported by the medical evidence." (Tr. 21). The ALJ gave little weight to Dr. Parmelee's opinion because it was "based in significant part on the subjective reports of limitations by the claimant," and is "contradicted by statements of treating sources that claimant is not so functionally limited." (Tr. 22).

The ALJ was not entitled to rely on Dr. Wolk's opinion that Plaintiff could perform "sedentary work" or Dr. Prebola's opinion that Plaintiff could perform "sedentary work." Pursuant to SSR 96-5p, "[a]djudicators **must not** assume that a medical source using terms such as 'sedentary' and 'light' is aware of our definitions of these terms." *Id.* (emphasis added). Here, the ALJ plainly assumed that both opinions meant that Plaintiff could perform sedentary work on a regular and continuing basis within the meaning of the Act. (Tr. 21-22).  The ALJ did not develop any evidence regarding what either physician meant when they wrote "sedentary." (Tr. 560). Consequently, the ALJ erred by assuming that the physicians meant sedentary as defined under the Social Security Act, which includes working on a regular and continuing basis. *See* SSR 96-5p. For the same reason, the ALJ erred in rejecting Dr. Prebola's opinion because it was allegedly "inconsistent" with his earlier opinion and rejecting Dr. Parmelee's opinion because it was "inconsistent" with Dr. Prebola's earlier opinion. *Id.*

The ALJ mischaracterized the record in concluding that Dr. Parmelee's opinion was primarily based on Plaintiff's subjective complaints. (Tr. 22). Dr. Parmelee's examination indicated thoracolumbar scoliosis, loss of cervical lordosis, difficulty getting out of the chair, standing and moving with difficulty, tenderness in the sacroiliac joint and spine, muscle spasm in her the cervical spine, lumbar spine, and trapezius muscles, limited range of motion, positive straight leg raise, tenderness in the shoulder, limited and painful range of motion in the hip, diminished sensation in his bilateral lower extremities, and difficulty getting on and off the examination table. (Tr. 541). Dr. Parmalee also reviewed MRIs of the lumbar and cervical spine showing encroachment on the neural foramina, protruding discs, fluid in the intervertebral joints, osteophytes and degenerative disc disease. (Tr. 542). *See Cotter v. Harris*, 642 F.2d 700, 707 (3d Cir. 1981) ("Since the ALJ…misconstrued the evidence considered, his conclusion…must be reconsidered"). Both rationales the ALJ provided for rejecting Dr. Parmelee's opinion were flawed, so the ALJ rejected her opinion for "no reason or the wrong reason." *Morales*, 225 F.3d at 317.

The ALJ also erred in assigning little weight to Dr. Prebola's 2012 opinions. Defendant asserts that the ALJ properly assigned weight to the medical opinions, citing the deferential nature of substantial evidence review. (Def. Brief at 20). However, "[a] cardinal principle guiding disability eligibility determinations is that

the ALJ accord treating physicians' reports great weight" ("treating source rule").

*Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000). The ALJ must meet stricter

standards to resolve an evidentiary conflict against a treating source medical

opinion than the ALJ must meet to resolve other evidentiary conflicts. *See* 20

C.F.R. §404.1527(c). The ALJ resolves other evidentiary conflicts pursuant to the

deferential substantial evidence standard, where the Court upholds the resolution if

any reasonable person would have done the same. *See Johnson v. Commissioner of*

*Social Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Pierce v. Underwood*, 487 U.S. 552,

565 (1988). In contrast, in order to resolve an evidentiary conflict against a treating

source medical opinion, the ALJ must provide "good" reasons. *See* 20 C.F.R.

§404.1527(c)(2). "Good reasons" must be higher than substantial evidence,

otherwise, the "good reasons" language would be superfluous. *See Bilski v.*

*Kappos*, 561 U.S. 593, 607–08, 130 S.Ct. 3218, 177 L.Ed.2d 792 (2010) (internal

citations omitted) (Court may not interpret "any statutory provision in a manner

that would render another provision superfluous"); *see also* Standards for

Consultative Examinations and Existing Medical Evidence, 56 FR 36932-01 at

*36936 ("as long as the treating source is someone entitled to special deference,

and all other factors are equal, we will always give more weight to treating source

medical opinions than to opinions from other sources").

As discussed above, the ALJ erred in rejecting Dr. Prebola's opinion for being inconsistent with his earlier opinions, because to find them inconsistent, the ALJ impermissibly assumed that Dr. Prebola was using the word "sedentary" as defined under the Act. *See* SSR 96-6p. The ALJ also found that Dr. Prebola was biased, his opinion was "not supported the medical evidence," and contradicted by Dr. Tedesco's opinion. (Tr. 21-22).

With regard to bias, Defendant asserts that "it is 'well known' that a treating medical source 'will often bend over backwards to assist a patient in obtaining benefits.'" (Def. Brief at 22-23) (citing *Hofslien v. Barnhart*, 439 F.3d 375, 377 (7th Cir. 2006) (citing *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 832 (2003)); *see also Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir. 2001); *Pysher v. Heckler*, 640 F.Supp. 837, 840 (E.D. Pa. 1986). However, if this tendency was "well-known" to these Courts, then it would have been well-known to the Social Security Administration.  The Social Security Administration codified the treating source rule and instructed ALJs to afford deference to treating sources. *See* 20 C.F.R. §404.1527(c)(2). Allowing the ALJ to conclude that a physician is biased simply because they have a treating relationship with a claimant, without any evidence of actual bias, directly contradicts the Regulations instructing the ALJs to assign greater weight to evidence from treating sources, because of their treating relationship with a claimant.  *See Neitz v. Colvin*, No. 3:13-CV-2557, 2015 WL

1608725, at *8-9 (M.D. Pa. Apr. 10, 2015) (ALJ's reliance on physician's alleged "altruistic" and financial interest constituted rejecting evidence for the "wrong reason") (citing *Shedden v. Astrue,* 4:10–CV–2515, 2012 WL 760632, at *10 (M.D.Pa. Mar.7, 2012) ("If allowed to stand, an administrative law judge could reject treating physicians' opinions in every case and nullify the principles set forth by the Court of Appeals for the Third Circuit in *Morales, supra*" regarding the treating source rule).

The ALJ also erred in concluding that the medical evidence did not "support" Dr. Prebola's opinion. The ALJ summarizes and discusses the medical opinions, but none of the other medical evidence or treatment records. (Tr. 20-22). Aside from assigning weight to the medical opinions, the ALJ noted only that his RFC is "consistent with the objective medical evidence including diagnostic testing and measurable findings in clinical examinations." (Tr. 22). The ALJ does not discuss Plaintiff's course of treatment, the consistency of his claims, or any other relevant evidence. (Tr. 20-22). Nor does the ALJ explain how the diagnostic testing fails to support Plaintiff's claim, aside from noting that it "an MRI of the cervical spine on November 24, 2006 shows protruding discs at C4-5, C5-6, C6-7 with osteophytes, encroachment on neural foramina on the left C6-7, on the right C4-5 and C5-6 with thoracolumbar scoliosis and straightening of the cervical lordosis. The MRI of the lumbar spine on November 24, 2006 revealed

degenerative disc disease at LS-Sl, encroachment of the neural foramina on the right more than the left and fluid in the intervertebral joints at LS-Sl, L4-L5, L3-L4. (10F/4-5)." (Tr. 21).

The ALJ failed to address and explain significant evidence that supports Dr. Prebola's opinion. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) ("the Secretary must "explicitly" weigh all relevant, probative and available evidence. The Secretary must provide some explanation for a rejection of probative evidence which would suggest a contrary disposition. The Secretary may properly accept some parts of the medical evidence and reject other parts, but she must consider all the evidence and give some reason for discounting the evidence she rejects") (citing *Dobrowolsky v. Califano,* 606 F.2d 403, 407 (3d Cir.1979); *Brewster v. Heckler,* 786 F.2d 581, 584-85 (3d Cir.1986); *Cotter,* 642 F.2d at 705; *Stewart v. Secretary of H.E.W.,* 714 F.2d 287, 290 (3d Cir.1983)); *see also Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) (the ALJ's sparse synopsis of it makes it impossible for us to review the ALJ's decision, for we "cannot tell if significant probative evidence was not credited or simply ignored.") (quoting *Burnett,* 220 F.3d at 121). The ALJ's cursory analysis of the evidence precludes the Court from concluding the ALJ properly found that the evidence did not support Dr. Prebola's opinion. *See Neitz v. Colvin*, No. 3:13-CV-2557, 2015 WL 1608725, at *8 (M.D. Pa. Apr. 10, 2015)( citing *Ray v. Colvin,* 1:13–CV–0073, 2014 WL 1371585, at

*21 (M.D.Pa. Apr.8, 2014) ("The cursory manner in which the ALJ rejected Dr. Jacob's opinions runs afoul of the regulation's requirement to "give good reasons" for not crediting the opinion of a treating source upon consideration of the factors listed above. While there may be sufficient evidence in the record to support the ALJ's ultimate decision that Plaintiff was not under a disability, and, thus, the same outcome may result from remand, the court cannot excuse the denial of a mandatory procedural protection on this basis.")).

The ALJ also erred in relying on Dr. Tedesco's opinion to reject Dr. Prebola's opinion. Defendant asserts that the ALJ properly considered the opinion evidence. (Def. Brief at 15-20) (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999); *Fargnoli v. Massanari*, 247 F.3d 34, 43 (3d Cir. 2001); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 201 (3d Cir. 2008); *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). However, these cases do not support Defendant's position. In *Plummer*, the ALJ relied on three *treating source* opinions to reject another treating source opinion. *Plummer*, 186 F.3d at 430. The ALJ did not reject treating source opinions in favor of a non-treating source opinion. *Id.*  In *Fargnoli,* the Third Circuit remanded because the ALJ did "not mention" a treating source opinion. *Fargnoli v. Massanari*, 247 F.3d 34, 43 (3d Cir. 2001).

In *Chandler*, there were no treating source medical opinions before the ALJ. *Id.* at 360-63.   There were statements from a nurse practitioner, but a nurse

practitioner is not an acceptable medical source. *Id.* Statements from individuals who are not acceptable medical sources must be considered, but they are excluded from the definition of medical opinion. *Id.*; 20 C.F.R. §404.1527(a). Consequently, they may never be entitled to controlling weight and are not entitled to the treating source rule. *See* 20 C.F.R. §404.1527(c)(2). The claimant did submit two medical opinions in support of her claim, but not until after the ALJ decision. *Chandler*, 667 F.3d at 360. The Third Circuit excluded these from consideration because Plaintiff had no good cause for not submitting them until after the ALJ decision. *Id.* (citing *Matthews v. Apfel*, 239 F.3d 589, 595 (3d Cir. 2001). Consequently, there was only one medical opinion before the ALJ: an uncontradicted medical opinion from a state agency physician that the claimant was not disabled. *Chandler*, 667 F.3d at 360-63.

In *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 201 (3d Cir. 2008), the Third Circuit held that there was no treating source opinion pertinent to the relevant period. *Id.* at 201-03. The treating source offered testimony in the claimant's workers' compensation case regarding her function after August of 1991, when he first recommended splints and surgery for her right arm. JOHNSON v. ASTRUE, 2007 U.S. 3rd Cir. Briefs 2132 (3d Cir. 2007).  He opined that, after August of 1991, numbness in her right hand essentially precluded her from using her right arm. *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 201 (3d Cir. 2008)..

However, she had to establish onset of disability prior to March 31, 1991 to be entitled to DIB benefits under the Act. *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 201 (3d Cir. 2008). Her treating source had observed in July of 1991 that she "did 'not have a Tinel's at the wrist,' had 'no decrease in sensation in the fingers or the palm,' and had 'good muscle tone without evidence of atrophy at the thenar eminences bilaterally' (Tr. 318, 447, 526)". JOHNSON v. ASTRUE, 2007 U.S. 3rd Cir. Briefs 2132 (3d Cir. 2007). The "Magistrate Judge found that 'there is . . . no support in the record that Dr. Hunter found [Appellant] to be disabled within the relevant 14-month insured period from December 7, 1989 through March 31, 1991,' that the "workers' compensation testimony did not relate to the fourteen-month time period at issue, but rather to the time period between August 1991 and October 1993,' and the 'reports during the relevant period do not support disability, but rather support the ALJ's decision that [Appellant's] condition would not have prevented her from performing the limited sedentary jobs as identified by the VE that required little use of her right hand.'" JOHNSON v. ASTRUE, 2007 U.S. 3rd Cir. Briefs 2132 (3d Cir. 2007).

Moreover, the ALJ in *Johnson* relied on non-medical evidence. *Johnson v. Comm'r of Soc. Sec.,* 529 F.3d 198, 203 (3d Cir. 2008). The ALJ noted that "she testifies that she never drives, but the written evidence shows she described vision difficulties interfering with night driving only." *Johnson v. Comm'r of Soc. Sec.,*

529 F.3d 198, 203 (3d Cir. 2008). Similarly, although she alleged that she was "unable to hold, bathe, feed, lift or do any other physical activity for" multiple infant children that she cared for, but there was "no record of the claimant having mentioned these limitations to a doctor." *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 203 (3d Cir. 2008).

Unlike lay reinterpretation of medical evidence, the ALJ may reject a treating source opinion with non-medical evidence. Explanatory guidance from the Social Security Administration provides that:

> Although we would expect it to be an extremely rare occurrence, it is possible that a treating source's opinion about the nature or severity of a claimant's impairment(s), even one that is well-supported by medically acceptable clinical and laboratory findings, may nevertheless be contradicted, and even outweighed, by substantial nonmedical evidence. For example, an opinion from a treating source about what a claimant can still do which would seem to be well-supported by the objective findings would not be entitled to controlling weight if there was other substantial evidence that the claimant engaged in activities that were inconsistent with the opinion.

Standards for Consultative Examinations and Existing Medical Evidence, 56 FR 36932-01 at 36936; *see also Burns v. Colvin*, No. 1:14-CV-1925, 2016 WL 147269 (M.D. Pa. Jan. 13, 2016) (citing *Torres v. Barnhart*, 139 F. App'x 411, 414 (3d Cir. 2005) (ALJ permissibly rejected treating opinion "in combination with other evidence of record including Claimant's own testimony"); *Kays v. Colvin*, No. 1:13-CV-02468, 2014 WL 7012758, at *7 (M.D. Pa. Dec. 11, 2014) ("limitations in lifting or carrying imposed by [the physician] were inconsistent with

[claimant's] own testimony"); *Marr v. Colvin*, No. 1:13-cv-2499 (M.D.P.A. April 15, 2015) (ALJ properly rejected treating source medical opinion that claimant could not sit for more than two hours out of an eight-hour workday when she regularly sat for almost six hours at a time); *cf. Chunn v. Barnhart*, 397 F.3d 667, 672 (8th Cir. 2005) ("the ALJ's decision fails to explain how Chunn's activities and behaviors are inconsistent with Dr. Ziolkow's characterization of her mental capacity.").

Here, the non-medical evidence does not contradict Dr. Prebola's opinion. Defendant notes that Plaintiff was "able to feed a cat, handle his personal care, prepare meals, do laundry, conduct simple repairs around the house, mow the lawn, drive, and handle his personal care." (Def. Brief at 1) (citing Tr. 164-66, 172-73, 473). None of these activities indicate that he can perform full-time work, and are only minimally probative. *Id.* "[S]poradic and transitory activities cannot be used to show an ability to engage in substantial gainful activity." *Fargnoli v. Massanari*, 247 F.3d 34, 44 (3d Cir. 2001) (internal citations omitted).

Consequently, the cases cited by Defendant[1] are dicta with regard to rejecting a treating source opinion with a non-treating source opinion. *See*

---

[1] Defendant frequently cites *Jones v. Sullivan*, 954 F.2d 125 (3d Cir. 1991), as well. However, *Jones* was: (1) decided before 20 C.F.R. §404.1527 and SSR 96-6p were promulgated and (2) involved an ALJ who relied on two state agency medical opinions that corroborated each other to reject the treating source medical opinion. *See Jones*, 954 F.2d at 129 (ALJ may disregard the opinion of a treating physician

*Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999); *Fargnoli v. Massanari*, 247 F.3d 34, 43 (3d Cir. 2001); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 201 (3d Cir. 2008); *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011); *see also Burns v. Colvin*, No. 1:14-CV-1925, 2016 WL 147269, at *1 (M.D. Pa. Jan. 13, 2016) (citing *Kool, Mann, Coffee & Co. v. Coffey,* 300 F.3d 340, 355 (3d Cir.2002) (Statements that are "not necessary to the actual holding of the case" are "dicta" and "not binding"); *Calhoun v. Yamaha Motor Corp.,* 216 F.3d 338, 344 n. 9 (3d Cir.2000) ("Insofar as this determination was not necessary to either court's ultimate holding, however, it properly is classified as dictum. It therefore does not possess a binding effect on us pursuant to the 'law of the case' doctrine."); *Chowdhury v. Reading Hosp. & Med. Ctr.,* 677 F.2d 317, 324 (3d Cir.1982) ("[D]ictum, unlike holding, does not have the strength of a decision 'forged from actual experience by the hammer and anvil of litigation,' a fact to be considered when assessing its utility in the context of an actual controversy. Similarly, appellate courts must be cautious to avoid promulgating unnecessarily broad rules of law.") (quotations omitted)).

Unlike the cases cited by Defendant, there are at least four precedential Third Circuit opinions since Regulations were promulgated in 1991 codifying the

---

if "two physicians in the state agency evaluated the medical findings...and concluded that those findings did not reveal any condition that would preclude gainful employment").

treating source rule that directly address the standard for an ALJ to reject a treating source medical opinion in favor of a non-treating source medical opinion. *See Brown v. Astrue*, 649 F.3d 193 (3d Cir. 2011); *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500 (3d Cir. 2009); *Brownawell v. Comm'r Of Soc. Sec.*, 554 F.3d 352, (3d Cir. 2008); *Morales*, 225 F.3d at 317. Additionally, SSR 96-6p provides that a non-treating, non-examining medical opinion may be assigned greater weight than a treating medical opinion in "appropriate circumstances." SSR 96-6p, 1996 WL 374180 at *3 (July 2, 1996). SSR 96-6p does not define "appropriate circumstances," but provides an example: when the non-treating, non-examining source was able to review a "complete case record…which provides more detailed and comprehensive information than what was available to the individual's treating source." *Id.* This example does not constitute the only possible appropriate circumstance to assigning greater weight than a treating medical opinion, but the phrase "appropriate circumstance" should be construed as a similarly compelling reason. *See Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 223, 128 S. Ct. 831, 838, 169 L. Ed. 2d 680 (2008) ("when a general term follows a specific one, the general term should be understood as a reference to subjects akin to the one with specific enumeration").

The only case affirming an ALJ who rejected a treating source medical opinion was *Brown*, where the facts paralleled the example in SSR 96-6p. *Brown*,

649 F.3d at 196. In *Brown*, two state agency opinions supported the ALJ's denial, and one of state agency experts was able to review the entire record through the date of the ALJ hearing. *Id.*; *see also Labarre v. Colvin*, No. 1:14-CV-02484, 2016 WL 613593, at *7 (M.D. Pa. Feb. 16, 2016); *Davern v. Colvin*, No. 115CV00162CCCGBC, 2016 WL 702979, at *10 (M.D. Pa. Jan. 20, 2016) *report and recommendation adopted,* No. 1:15-CV-162, 2016 WL 695114 (M.D. Pa. Feb. 19, 2016) ("multiple consistent opinions…provide substantial evidence for the ALJ's RFC assessment"); *Bergstresser v. Colvin*, No. 3:15-CV-1744, 2016 WL 539038, at *10 (M.D. Pa. Feb. 11, 2016) (Noting that ALJ credited medical opinion that was "consistent with" another medical opinion). Consistent with SSR 96-6p, *Brown*, 649 F.3d at 196

In *Brownawell* and *Morales*, the Third Circuit held that a single non-treating medical opinion was not sufficient to reject a treating source medical opinion. *See Brownawell*, 554 F.3d at 352; *Morales*, 225 F.3d at 317. In *Morales*, the Third Circuit explained that "[a] single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by counterveiling evidence. Nor is evidence substantial if it is overwhelmed by other evidence—particularly certain types of evidence (e.g., that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion." *Id.* In *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500 (3d Cir. 2009), there

were three non-treating medical opinions and one treating medical opinion, but the Court held that the non-treating medical opinions did not provide good enough reason to reject the treating source medical opinion because they were "perfunctory" and omitted significant objective findings. *Id*. at 505.

*Morales* also emphasized that the non-treating, non-examining source reviewed an incomplete case record. *See Morales*, 225 F.3d at 314 (non-treating, non-examining source "review[ed] [claimant's] medical record which…did not include [two physicians'] reports"); *see also Kreiser v. Colvin*, No. 3:15-CV-1603, 2016 WL 704957, at *13 (M.D. Pa. Feb. 23, 2016) (Noting that expert "reviewed records…through November 2012" and "the record does not appear to contain….treatment records which post date [the expert's] opinion"); *Austin v. Colvin*, No. 1:13-CV-02878-GBC, 2015 WL 4488333 (M.D. Pa. July 23, 2015) (ALJ's assessment of medical opinions must be viewed in light of *Ferguson v. Schweiker*, 765 F.2d 31, 37, 36-37 (3d Cir. 1985), which prohibits lay reinterpretation of medical evidence); *Staudt v. Colvin*, No. 1:13-CV-2904, 2015 WL 1605574, at *10 (M.D. Pa. Apr. 9, 2015).

This case is like *Morales*, because the ALJ relied on only a single non- non-treating source medical opinion, erroneous lay inferences gleaned from medical records, and an erroneous characterization of the non-medical evidence. *Morales*, 225 F.3d at 317. This case is also like *Brownawell*, because there were two

opinions that corroborated each other and supported Plaintiff's claim for benefits. *Brownawell*, 554 F.3d at 357. This case is unlike *Brown*, as Dr. Tedesco authored the only opinion supporting the denial, and he was unable able to review a complete case record. *Brown,* 649 F.3d at 194.

This case is also like *Diaz*, as Dr. Tedesco's opinion is more cursory, and does not provide a sufficient explanation for why he thought Plaintiff had no sitting limitation whatsoever or would be able to walk for six-hours out of an eight-hour day. *Diaz*, 577 F.3d at 506. He wrote that Dr. Parmelee's opinion was "not consistent with all of the medical and non-medical evidence in the claims folder." (Tr. 555). Dr. Tedesco did not explain what evidence was inconsistent with Dr. Parmelee's opinion. (Tr. 554). Dr. Tedesco wrote that Plaintiff reported "daily activities that are significantly limited" and had pursued treatment "aggressively," rather than conservatively. (Tr. 554). Dr. Tedesco cites the diagnostic imaging showing neuroforaminal encroachment, and Dr. Prebola's physical examinations that showed cervical and lumbar spasms, decreased range of motion, positive straight leg raise, and decreased grip strength. (Tr. 554). Dr. Tedesco notes that the state agency interviewer observed no problems sitting or standing, he can walk "200 yards," and does not require an assistive device to ambulate. (Tr. 554). None of this evidence is inconsistent with Plaintiff claims, Dr. Prebola's opinion, or Dr. Parmelee's opinion. (Tr. 554).

Dr. Tedesco also explained that Dr. Parmalee did not have a treating relationship with Plaintiff, and that her one-time examination represented only a "snapshot of the claimant's functioning." (Tr. 555). Dr. Tedesco does not acknowledge Dr. Prebola's opinion that Plaintiff was limited to sedentary activities, although he cited other evidence from the same treatment record. (Tr. 551-55, 560). An opinion from Dr. Tedesco would not be subject to criticism as a "snapshot," because it was based on his longitudinal treatment relationship. Consequently, Dr. Tedesco's failure to acknowledge Dr. Prebola's opinion undermines the reliability of Dr. Tedesco's opinion. *See Boyer v. Colvin*, No. CV 1:14-CV-730, 2015 WL 6438870, at *9 (M.D. Pa. Oct. 8, 2015) (Non-examining state agency opinion was insufficient to reject treating source opinion where state agency physician "mischaracterized the record").

The Court must consider the binding precedent in *Morales*, *Brownawell*, and *Diaz* for proper evaluation of Dr. Prebola's and Dr. Parmelee's opinions, along with SSR 96-6p, which is "binding on all components of the Social Security Administration." 20 C.F.R. § 402.35(b)(1); *see also Morales*, 225 F.3d at 317; *Brownawell*, 554 F.3d at 357; *Diaz*, 577 F.3d at 506; *Burns v. Colvin*, No. 1:14-CV-1925, 2016 WL 147269, at *1 (M.D. Pa. Jan. 13, 2016) ("When binding precedent squarely addresses an issue, the District Court may not deviate from that precedent based on dicta.") (citing *Bd. of Trustees of Bricklayers & Allied*

*Craftsmen Local 6 of New Jersey Welfare Fund v. Wettlin Associates, Inc.*, 237 F.3d 270, 275 (3d Cir.2001) ("To the extent it applied dicta ... the District Court erred")). Pursuant to these cases, the Court will carefully scrutinize a decision denying benefits despite a supporting treating source medical opinion based only on a single non-examining, non-treating medical opinion.[2] Here, the only evidence that contradicted Dr. Prebola's opinion was a single non-examining, non-treating medical opinion that was perfunctory and omitted key evidence. None of the rationales provided by the ALJ provide "good reasons" to reject the ALJ. 20 C.F.R. §404.1527(c)(2). This case does not present "appropriate circumstances" to credit Dr. Tedesco's opinion over Dr. Prebola's and Dr. Parmelee's opinions. *See* SSR 96-6p. The Court recommends remand for the ALJ to properly address Dr. Prebola's opinion and Dr. Parmelee's opinion.

---

[2] The Court acknowledges that ALJs may be pressured to deny applications because "the growing resource demands of Social Security, Medicare, and Medicaid will exert pressure on the budget that economic growth alone is unlikely to alleviate." THE BUDGET FOR FISCAL YEAR 2006, 2006 WL 4593599, at *19. However, these external conditions do not change the definition of disability under the Act or the standards the ALJs must use in evaluating applications. Any change to the definitions or standards must come from legislative action or regulatory action that constitutes the "fair and considered" assessment of the Social Security Agency. *See Burns v. Colvin*, No. 1:14-CV-1925, 2016 WL 147269, at *1 (M.D. Pa. Jan. 13, 2016) (quoting *Christopher v. SmithKline Beecham Corp.*, —— U.S. ——, 132 S.Ct. 2156, 2166–67 (2012)). The Commissioner's position in this case is not entitled to deference because, in the absence of any formal mechanism of expressing its "fair and considered" judgment, such as a regulation, SSR, or acquiescence ruling, it is merely "a convenient litigating position, or a post hoc rationalization advanced by an agency seeking to defend past agency action against attack." *Id.*

## B.   Other Allegations of Error

Because the Court recommends remand on these grounds, it declines to address Plaintiff's other allegations. A remand may produce different results on these claims, making discussion of them moot.   *See LaSalle v. Comm'r of Soc. Sec.*, No. CIV.A. 10-1096, 2011 WL 1456166, at *7 (W.D. Pa. Apr. 14, 2011).

However, the Court notes that a Third-Party Function report appears in the record from Carol McDonnell, Plaintiff's mother. (Tr. 162-70). Plaintiff did not raise this issue, but the Third Circuit requires the ALJ to explicitly address third-party witnesses. *See Shoemaker v. Colvin*, No. 114CV02049SHRGBC, 2015 WL 9690310, at *13-14 (M.D. Pa. Dec. 18, 2015) *report and recommendation adopted*, No. 1:14-CV-2049, 2016 WL 107962 (M.D. Pa. Jan. 11, 2016) (internal citations omitted). On remand, the ALJ should be instructed to address and explain the weight given to the report of Carol McDonnell. *Id.*

## VI.   Conclusion

Remand, rather than reversal and award of benefits, is the appropriate remedy in this case. *See Markle v. Barnhart*, 324 F.3d 182, 189 (3d Cir. 2003) ("[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation") (internal quotations omitted)).The undersigned recommends that the Court vacate the decision of the Commissioner

pursuant to 42 U.S.C. § 405(g) and remand the case for further proceedings.

Accordingly, it is HEREBY RECOMMENDED:

1.      The decision of the Commissioner of Social Security denying Plaintiff's

benefits under the Act be vacated and the case remanded to the Commissioner of

Social Security to develop the record fully, conduct a new administrative hearing

and appropriately evaluate the evidence.

2.      The Clerk of Court close this case.

        The parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a Magistrate Judge's proposed findings,
> recommendations or report addressing a motion or matter described in
> 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
> disposition of a prisoner case or a habeas corpus petition within
> fourteen (14) days after being served with a copy thereof. Such party
> shall file with the clerk of court, and serve on the Magistrate Judge
> and all parties, written objections which shall specifically identify the
> portions of the proposed findings, recommendations or report to
> which objection is made and the basis for such objections. The
> briefing requirements set forth in Local Rule 72.2 shall apply. A
> Judge shall make a de novo determination of those portions of the
> report or specified proposed findings or recommendations to which
> objection is made and may accept, reject, or modify, in whole or in
> part, the findings or recommendations made by the magistrate judge.
> The Judge, however, need conduct a new hearing only in his or her
> discretion or where required by law, and may consider the record
> developed before the magistrate judge, making his or her own
> determination on the basis of that record. The Judge may also receive
> further evidence, recall witnesses or recommit the matter to the
> Magistrate Judge with instructions.

Dated: March 18, 2016                    s/Gerald B. Cohn
                                         _____
                                         GERALD B. COHN
                                         UNITED STATES MAGISTRATE JUDGE